## Johnson v. Commonwealth.

(Decided June 19, 1931.)

H. F. PRICE for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT. Assistant Attorney General, for the Commonwealth.

Opinion of the Court by Hobson, Commissioner—Affirming.

Harvey Douglass, Hobart Hart, Ernest Johnson, and Julias McNalley were indicted in the Boyd circuit court for the offense of unlawfully and feloniously having in their possession burglar's tools, with the intention of using the tools burglariously. Johnson was placed on trial. He was found guilty and his punishment fixed at five years' imprisonment. He appeals.

The first question made is that the defendant's demurrer to the indictment should have been sustained. Section 1159, Kenutcky Statutes, provides:

> "If any person shall have or keep in his possession any tools, implements, or other things used by burglars for housebreaking, forcing doors, windows, locks, or buildings, or other places where goods, wares, or merchandise or money is kept, with the intention of using said tools or implements burglariously, he shall be confined in the penitentiary not less than two nor more than ten years."

The indictment charges, in substance, that the defendants, before the finding of the indictment, on the ——— day of April, 1931, unlawfully and feloniously had in their possession divers keys, files, screwdrivers, powder, fuses, dynamite caps, soap, and jimmy bars, all of which are used by burglars for housebreaking, the defendants then and there intending to use said implements, tools, and other things burglariously. The indictment practically follows the language of the statute. It accurately informed the defendants what was charged against them. The demurrer to it was properly overruled.

On the trial of the case the commonwealth proved these facts: Several cars had been stolen in Ashland a day or two before and the police were on the lookout for the thieves. Between 12:30 and 1 o'clock on the night of January 24, 1931, two policemen were in their car on the street on the outskirts of the city keeping a lookout; they had their lights turned off. While sitting there and looking around, they saw a car coming down the drive. Harvey Douglass was driving and the other three men were in the car with him. They were driving illegally. One offense was driving an automobile with a West Virginia license when notice had been given not to drive it

any more. Another was that they did not have any tail-light on the car. The policemen followed the car and arrested them when they stopped at Dr. Sturgell's office. When arrested, Ernest Johnson and Harvey Douglass each had a pistol concealed on his person. They found, in the overcoat pocket of one of the defendants, a piece of dynamite fuse that is used to explode dynamite caps, also a bunch of automobile keys which Johnson had, and extra shells for a 38 pistol. They also found dynamite caps in the car and numerous tools, one of which was a jimmy bar, which is a piece of steel about as big as a man's finger and about eighteen inches long and at one end it was cut down to a point like a chisel; then there was an inset in the middle to pull a nail with. They also found in the car a blackjack. One of the defendants was sitting on it. Some soap was also found in the car, such as is ordinarily employed in safe cracking, and they also found soap in McNalley's pocket in a towel like those used in a barber shop. One of the keys was a skeleton key, but there were a large number of other keys on the ring, such as will pick most any kind of lock, especially an automobile door lock. The police tried them to a number of locks to automobile doors. Among other things found in the car was stolen property, part of which had been stolen from a barber shop and part was a chicken, a dozen eggs, and a pound of butter which had been taken out of a man's car. In the bunch of keys were found the keys to three cars that had been stolen that week. The court allowed the above facts to be proved by the policemen who made the arrest, and by the owners of the property that had been stolen, to all of which the defendants excepted; and it is earnestly insisted on the appeal that the evidence should have been excluded and the jury peremptorily instructed to find for the defendant. The motion was overruled. The defendant offered no testimony and the case was submitted to the jury under the following instruction:

"If the jury believe from the evidence beyond a reasonable doubt that the defendant Ernest Johnson in Boyd County, Kentucky, before the finding of the indictment herein, unlawfully, feloniously and knowingly, did have in his possession, keys, screw-drivers, tools or implements, fuses, dynamite caps, soap or jimmy bars, adapted, designed and ordinarily used by burglars for house breaking, forcing

windows, doors, locks, buildings, or places where goods, wares, merchandise or monies are kept, with the felonious intention of using said tools or any of them burglariously, then the jury will find him guilty as charged in the indictment and fix his punishment by confinement in the penitentiary for not less than two years and not more than ten years in your discretion.''

Ordinarily proof of the commission of other offenses is incompetent, but where the question of intent is a necessary part of the offense, proof of other acts of the defendant, showing his intent at the time in question, is admissible. What the defendant had been doing with the tools in his possession shortly before his arrest was competent to show his intent in having them in his possession. This question was fully considered in Commonwealth v. Riley, 192 Ky. 153, 232 S. W. 630; Lambert v. Com., 219 Ky. 806, 294 S. W. 466; and Burley v. Com., 236 Ky. 200, 32 S. W. (2d) 970.

A skeleton key is a burglar's tool, Anderson v. Com., 176 Ky. 373, 195 S. W. 794. In addition to this, the defendant had a large bunch of keys which would open almost any car door and they had in the car dynamite caps, a fuse, a jimmy bar, and soap, which is used to make dynamite more effective on a safe. There was clearly sufficient evidence to take the case to the jury and to warrant the verdict.

The commonwealth's proof was not obtained by an illegal search and the motion to exclude the evidence was properly overruled. By section 36 of the Criminal Code of Practice, an officer may arrest without a warrant when a public offense is committed in his presence. Here the defendant had committed, in the presence of the officers, at last three offenses: (1) Driving the car without a taillight; (2) driving the car without the proper license; (3) having concealed upon his person deadly weapons. When the defendants were thus legally arrested, the officers had a perfect right to search them and the car. Commonwealth v. Riley, 192 Ky. 153, 232 S. W. 630; Morris v. Com., 231 Ky. 838, 22 S. W. (2d) 295.

The commonwealth attorney, in his openening statement to the jury, had a right to tell the facts which the commonwealth expected to prove. The statement did not go beyond the facts alleged in the indictment or the proof offered on the trial, and no substantial rights of the

defendant was prejudiced thereby. Lambert v. Com.; 219 Ky. 806, 294 S. W. 466.

Appellant earnestly complains that the court did not admonish the jury as to the purpose for which the evidence of other offenses was to be considered. But this court has often held that the defendant will be deemed to have waived such admonition, unless he asks this. Keller v. Com., 230 Ky. 821, 20 S. W. (2d) 998. The defendant not only asked no such admonition, but in fact by his conduct in the circuit court really rested his defense on the ground that the evidence was incompetent for any purpose, and on the whole case the court is unable to see this, his substantial rights were prejudiced by the failure to give this admonition to the jury.

The instruction of the court submitted to the jury the facts charged in the indictment clearly and no substantial right of the defendant was prejudiced thereby.

Lastly, it is insisted that A. N. Cisco, an attorney in Ashland, sat with the commonwealth attorney during the trial, co-operating with the prosecution and the court refused to require him to disclose who had employed him or whom he represented. But no showing was made that he had done anything that was improper, and there is nothing in the record to indicate that any right of the defendant was prejudiced by the refusal of the court to require Judge Cisco to answer the question.

Judgment affirmed.